UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| LSC, LLC, | ) | |
| | ) | Civil Case No. |
| Plaintiff, | ) | 5:15-cv-134-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FITNESS & SPORTS CLUBS, LLC, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

This matter is before the Court upon the parties' cross-motions for a dispositive ruling in this breach of contract action.  *See* DE 12, 13.  Both Plaintiff and Defendant have filed briefs in opposition to the other party's motion and each has agreed to forgo the filing of reply memoranda.  The Court, having reviewed the matter and being sufficiently advised, is prepared to issue a ruling.

I.   **BACKGROUND**

This action involves the termination of a sublease for the seventh floor of the Lexington Financial Center parking garage structure, located at 230 West Main Street, Lexington, Kentucky (the "Premises").  Plaintiff is the master tenant of the Premises, having leased the property from the Commonwealth of Kentucky since 1986.  Until recently, the Defendant operated an L.A. Fitness franchise at the Premises.

On January 1, 2004, Plaintiff subleased the Premises to Global Fitness Holdings, LLC (the "GFH Sublease"). Contemporaneously, Global Fitness subleased the Premises to Downtown Fitness, LLC (the "DFL Sublease"). Downtown Fitness maintained operations at the Premises from 2004 through 2012. On October 26, 2012, Plaintiff, Global Fitness, Downtown Fitness, and Defendant entered into an agreement by which Defendant acquired all rights and obligations under the GFH and DFL Subleases.[1]

The Term of the GFH Sublease is for a period of 20 years, commencing on January 1, 2004 (the Commencement Date) and expiring at 11:59 p.m. on December 31, 2023 (the Expiration Date). The Sublease provides that the Term shall begin and end on the Commencement Date and Expiration Date, respectively, unless the sublease "is terminated earlier as provided elsewhere herein." GFH Sublease, § 2.01. Section 21.03 of the GFH Sublease goes on to state:

> Force Majeure. After expiration of the 120th month of this Sub-Lease, if Tenant determines that the downtown market is no longer capable of sustaining and supporting the operation of this business at this location, then Tenant shall have a one time privilege

---

[1] Defendant contends that when it acquired the subleases, any viable rights and/or obligations under the DFL Sublease were extinguished, as Defendant acquired the rights of both landlord and tenant. Moreover, Defendant notes, Plaintiff was not a party to the DFL Sublease. It appears that Plaintiff does not dispute this, as it does not seek to enforce the DFL Sublease in any way. Rather, Plaintiff argues, the DFL Sublease is extrinsic evidence supporting Plaintiff's interpretation of the Force Majeure Clause in the GFH Sublease.

2

of terminating this Sub-Lease arrangement by giving
Landlord 180 days advance notice to this effect.

On April 10, 2015, Defendant gave its written notice to

Plaintiff stating that Defendant had elected to terminate the

Sublease.  Specifically, Defendant stated:

> As it is after the 120th month of the Sublease (i.e.,
> after December 31, 2013), formal notice is hereby
> given to Landlord that Tenant elects to exercise its
> right to terminate the Sublease pursuant to the terms
> of 21.03 of the Sublease.

> Accordingly, the Sublease shall terminate on October
> 10, 2015 (i.e., 180 days after receipt of this written
> notice).

Plaintiff rejected Defendant's contention that it had a right to

terminate, arguing that the contract language provided for a

"one time" right to terminate that both arose and expired on

December 31, 2013—120 months into the Term of the GFH Sublease.

Despite Plaintiff's rejection of Defendant's notice, Defendant

ceased operations of LA Fitness at the Premises on May 29, 2015.

The parties seek a determination as to whether Defendant's

termination was proper under the terms of the contract.

## II.  STANDARD OF REVIEW

Plaintiff has styled its request for relief as a motion for

summary judgment, while Defendant has styled its as a motion for

judgment on the pleadings.  Summary judgment is appropriate when

the movant has shown that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility for providing the basis for its motion. It must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A motion for judgment on the pleadings attacks the sufficiency of the complaint and is resolved by reference to the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Penny/Olmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). Accordingly, all factual allegations in the complaint are accepted as true and a motion for judgment on the pleadings will be granted only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Courts typically do not look outside the pleadings when considering these motions, but the court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. Of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

Since the parties do not ask the Court to look outside the contracts attached to the complaint, there is no weighing of evidence of evidence to be done.[2]  The parties concede that there is no factual dispute at issue—only a disagreement as to contractual interpretation.  While either type of decision is subject to de novo review, the Court notes that this decision is more properly characterized as a judgment on the pleadings.

**III. DISCUSSION**

The Court begins by examining the language of the GFH Sublease and, specifically, the Force Majeure Clause.  Both parties contend that the language is unambiguous, but they disagree as to its meaning.  While Plaintiff maintains that the clause gave Defendant a single termination right that both arose and expired on December 31, 2013, Defendant argues that the plain language of the clause gave it the right to terminate the Sublease at any point in time after the expiration of the 120th month of the Term.

> Force Majeure.  After expiration of the 120th month of this Sub-Lease, if Tenant determines that the downtown market is no longer capable of sustaining and supporting the operation of this business at this location, then Tenant shall have a one time privilege of terminating this Sub-Lease arrangement by giving Landlord 180 days advance notice to this effect.

---

[2] Defendant has also filed as exhibits various entries from dictionaries providing definitions for the word "after."  The Court is permitted to take judicial notice of dictionary definitions without converting the motion into a motion for summary judgment, as the definitions are not subject to reasonable dispute.  *See Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 944 (6th Cir. 1993).

As Plaintiff stresses, the parties' intent is to be given full effect whenever possible.   The Court determines the parties' intent, however, from the plain meaning of the contractual language.  *See Energy Marketing Servs. Inc. v. Homer Laughlin China Co.*, 229 F.3d 1151, 2000 WL 1276751, *5 (Table) (6th Cir. Aug. 29, 2000).   It is a cardinal rule of contract interpretation that words and phrases are to be given their ordinary meanings.  *Bd. of Regents of Ky. State. Univ. v. Gale*, 898 S.W.2d 517, 521 (Ky. Ct. App. 1995).   Accordingly, this analysis begins with the most controversial word in this dispute—"after."   Plaintiff contends that, here, when the parties used the word "after," they meant immediately or shortly thereafter the expiration 120th month of Term of the Sublease— December 31, 2013.   Kentucky courts have looked to dictionaries to determine the "ordinarily used meaning[s]" of words in question.  *Character & Fitness Comm. Office of Bar Admissions v. Jones*, 62 S.W.3d 28, 31–32 (Ky. 2001).   Webster's Dictionary defines "after" as "following in time; a later time; or following in time or place."   Other dictionaries provide similar definitions.  *See* BLACK'S LAW DICTIONARY (5th ed. 1979); AMERICAN HERITAGE DICTIONARY (5th ed. 2011); RANDOM HOUSE DICTIONARY (2nd ed. 2001).  Notably, no dictionary that the Court consulted provided any definition wherein "after" is qualified by any word such as "immediately." Plaintiff provides a compelling argument when it

6

points out that "after" takes on different meanings in different contexts. One helpful example that Plaintiff provides is, "Our son moved home after four years in college." The Court agrees with Plaintiff that in this particular context, the listener would most likely conclude that the student moved home shortly after finishing college. Certainly, "after" could be used in a contractual context to convey a similar sense of promptness. Unless the context of this contract requires such a definition, however, the Court is obligated to assign the word's general, ordinary meaning.

Plaintiff contends that the inclusion of the phrase "one time" provides the context needed to demonstrate the parties' intent that Defendant's termination right would begin and end on December 31, 2013. Plaintiffs argue that any other reading would eviscerate the "one time" language because the right to terminate a lease is inherently a one-time right. The Court disagrees, however. While the plain meaning of "one time" might render the parties' inclusion of the language unnecessary, it does not render it meaningless. Further, the reading suggested by the Plaintiff goes too far, giving meaning to language that simply is not there. As the Court agrees with the parties that the Force Majeure Clause of the GFH Sublease is unambiguous, resort to the language of the DFL Sublease would be inappropriate.

7

Accordingly, **IT IS HEREBY ORDERED:**

(1)  that Plaintiff's motion for summary judgment, [DE 12], is **DENIED;** and

(2)  that Defendant's motion for judgment on the pleadings, [DE 13], is **GRANTED.**

This the 4th day of September, 2015.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge